UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| Aleh Balkunou, <br><br> Plaintiff, <br><br> vs. <br><br> Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security (DHS), in his official capacity as well as his successors and assigns, <br><br> and <br><br> Andrew Davidson, Acting Chief of the Asylum Division, USCIS, in his official capacity as well as his successors and assigns, <br><br> and <br><br> Matthew Emrich, Associate Director, Fraud Detection and National Security Directorate, USCIS, in his official capacity as well as his successors and assigns, <br><br> and <br><br> Ur Jaddou, Director of U.S. Citizenship and Immigration Services (USCIS), in her official capacity as well as her successors and assigns, <br><br> and <br><br> Ted Kim, Associate Director of Refugee, Asylum and International Operations Directorate, in his official capacity as well as his successors and assigns, <br><br> and <br><br> United States Citizenship And Immigration Services (USCIS), | **Case No.** 0:24cv60770 <br><br> Plaintiff's Complaint for Declaratory and Injunctive Relief, and For Writ of Mandamus <br><br> Agency Case Number: ZMI1600328450 |

1

| | |
|---|---|
| and | ) |
| | ) |
| <u>Miami Asylum Office;</u> | ) |
| | ) |
| Defendants. | ) |
| | ) |

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR WRIT OF MANDAMUS

**Aleh Balkunou ("Plaintiff")**, through his undersigned counsel, alleges as follows:

## I. INTRODUCTION

1. For generations, the United States has been a haven for immigrants seeking opportunity and upward mobility. *See, e.g.,* John F. Kennedy, *Nation of Immigrants* (1958); Emma Lazarus, *The New Colossus* (1883) (welcoming "your tired, your poor, your huddled masses"). After the failures of the global community to protect refugees during World War II and the Holocaust, the United States and the international community recognized that "All human beings are born free and equal in dignity and rights" and that "Everyone has the right to seek and to enjoy in other countries asylum from persecution." The Universal Declaration of Human Rights (Dec. 10, 1948), Art. 1, 11.

2. Plaintiff came to the United States to escape life-threatening persecution and obtain asylum. Plaintiff is a citizen of Belarus who was subjected to physical and psychological harm and had to flee due to his political opinion. Plaintiff lives in constant fear of being sent back to Belarus, where he could face imprisonment, physical and mental abuse, and suffering.

3. Plaintiff is not hiding in this country. Plaintiff lawfully presented to the United States Citizenship and Immigration Service ("USCIS") his meritorious claim for asylum. Since

then, USCIS has failed to comply with its duty to adjudicate his claim. Immigration and Nationality Act ("INA"), § 208(a), 8 U.S.C. § 1158(a). Instead, Plaintiff has waited more than seven years without USCIS scheduling his asylum interview or adjudicating his claim for asylum, and there is no likely end in sight to him waiting for a chance to have his claim heard.

4. Under policies USCIS enacted in January 2018, USCIS placed Plaintiff's asylum application in de facto indefinite suspension and may never adjudicate his claim. Defendants have, therefore, violated their non-discretionary, statutory duty to schedule his asylum interview and adjudicate his asylum claim.

5. USCIS' inaction has left Plaintiff in limbo, suffering uncertainty and an inability to settle into a stable and secure life.

6. This civil action seeks to compel unreasonably delayed government action on the adjudication of Plaintiff's Form I-589, Application for Asylum and for Withholding of Removal, affirmatively filed by Plaintiff that remains pending with Defendants at the Miami Asylum Office.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and the Mandamus Act, 28 U.S.C. § 1361, and 28 U.S.C. § 1651 because Plaintiff asks this Court to compel Defendants, officers of the United States, to perform their duty owed under INA § 208(d)(5)(A)(ii)-(iii), 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii).

8. Jurisdiction is also conferred on this Court pursuant to 5 U.S.C. § 704 as Plaintiff is aggrieved by adverse agency action which this Court is authorized to remedy under the Administrative Procedures Act, 5 U.S.C. §§ 702 *et seq.*

9. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§ 2201-02 which authorizes the issuance of declaratory judgments.

10. Plaintiff seeks costs and fees pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. §§ 2412(2) *et seq.*

11. This Honorable Court is not deprived of jurisdiction by 8 U.S.C. §1252, INA §242. *See,* e.g., *Zadvydas v. Davis,* 533 U.S. 678,688 (2001) (finding that INA §242 does not bar a claim challenging agency authority that does not implicate discretion). Generally, a narrower construction of jurisdiction-stripping provision is favored over the broader one, as reflected by the "familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder,* 130 U.S. 827, 839 (2010). Absent "clear and convincing evidence" of congressional intent specifically to eliminate review of certain administrative actions, the above-cited principles of statutory construction support a narrow reading of the jurisdiction-stripping language of 8 U.S.C. § 1252(a)(2)(B)(ii). *Id.,* at 839. *See also, Geneme v. Holder,* 935 F.Supp.2d 184, 192 (D.D.C. 2013) (discussing *Kucana 's* citation to a presumption favoring judicial review of administrative action when statute does not specify discretion.)

12. 8 U.S.C. §1252(a)(5), INA §242(a)(5), provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]" As the present action is not an action to review a removal order but an action challenging an unreasonably long delay in the adjudication of an I-589, Application for Asylum and for Withholding of Removal, this Honorable Court retains original jurisdiction under the APA and 28 U.S.C. § 1331, as well as for declaratory relief under 28 U.S.C. §2201.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1) because this judicial district is where the Defendants, acting through the Miami Asylum Office of the United States Citizenship and Immigration Services, have failed to take action required by law.

## III. THE PARTIES

14. Plaintiff, **Aleh Balkunou,** is a citizen of Belarus who currently lives in Tamarac, Florida. Plaintiff submitted an Asylum Application to USCIS on October 14, 2016.

15. Defendant USCIS assigned Plaintiff's asylum application to the Miami Asylum Office, which has yet to schedule his interview.

16. Defendant USCIS is an agency of the United States Department of Homeland Security ("DHS") charged with, *inter alia*, scheduling asylum interviews and adjudicating applications for asylum.

17. Defendant the Miami Asylum Office, located at 1501 Biscayne Boulevard, Suite 300, Miami, FL 33132, is an office within USCIS and the federal agency with direct authority and responsibility to schedule Plaintiff-applicant's asylum interview and adjudicate his Asylum Application.

18. Defendant Alejandro Mayorkas is the acting Secretary of the DHS and oversees DHS. In his official capacity, he is charged with the administration and enforcement of the INA, has the authority to determine the refugee status of applicants pursuant to 8 U.S.C. § 1158(b)(1)(A), and is authorized to delegate such powers and authority to employees of DHS, including those of USCIS. *See* 8 U.S.C. § 1103(a)(1). Defendant Mayorkas is named in this complaint in his official capacity.

19. Defendant Ur Jaddou is the acting Director of USCIS, the Agency charged with scheduling Plaintiff's asylum interview and adjudicating Plaintiff's Asylum Application. Defendant Jaddou is named in her official capacity.

20. Defendant Ted Kim is USCIS' Associate Director for Refugee, Asylum and International Operations. He has supervision over all asylum offices, including the Miami Asylum Office. Defendant Kim requires that some asylum applications be forwarded to headquarters before final adjudication. Defendant Kim is named in his official capacity.

21. Defendant Andrew Davidson, upon information and belief, is the Acting Chief of the Asylum Division within USCIS. Defendant Davidson is named in his official capacity.

22.     Defendant Matthew Emrich is USCIS' Associate Director of the Fraud Detection and National Security Directorate. He has supervision of all USCIS staff who review Asylum Applications to ensure that immigration benefits are not granted to individuals who pose a threat to national security or public safety, or who seek to defraud the immigration system. Certain applications must be reviewed by the Fraud Detection and National Security Directorate before their final adjudication. Defendant Emrich is named in his official capacity.

### IV. FACTS

23.     Plaintiff filed his Form I-589, Application for Asylum and for Withholding of Removal with United States Citizenship and Immigration Service ("USCIS") on October 14, 2016. *See* **Exhibit A, Acknowledgement of Receipt of Form I-589**, Application for Asylum and for Withholding of Removal.

24.     Further, Defendant USCIS mailed to Plaintiff the Form I-797, Notice of Biometrics Appointment with date and time of the biometrics appointment date. On October 31, 2016, Plaintiff attended his biometrics appointment, as requested. *See* **Exhibit B, ASC Appointment Notice.**

25.     To date, the Plaintiff's affirmative asylum case is pending. Since 2016, USCIS online case status states: "Next Step is an Interview." *See* **Exhibit C, Screenshot of the USCIS Case Status Online**. Plaintiff has been awaiting the asylum interview since October 14, 2016, for more than **seven years**.

26.     Plaintiff has not been advised of any deficiency in his 1-589 application.

27.     During this extended delay, Plaintiff suffers the hardships of being unreasonably and unlawfully deprived of the opportunity to meet with his parents and grandparents. Plaintiff's inability to visit his grandfather, who is suffering from cancer, even in a third country, due to the risk of being denied re-entry into the United States, further exacerbates Plaintiff's distress. The

emotional burden of being unable to be by grandfathers' side during such difficult times is immeasurable. Additionally, Plaintiff is deprived of the future opportunity to submit I-130 Application for his elder parents to be united and to continue their family union in the USA.

### A. Defendants Have a Statutory Duty to Process Plaintiff's Asylum Application

28.     Individuals who fear persecution in their countries of origin can affirmatively seek asylum in the United States. In order to do so, applicants must submit an Asylum Application to USCIS. After receiving the Asylum Application, USCIS is responsible for scheduling an asylum interview in order to process the Asylum Application. Under INA 208 § 1158(a), 8 U.S.C. § 1158(a), USCIS has a non-discretionary duty to adjudicate Plaintiff's asylum claim.

29.     "[I]n the absence of exceptional circumstances, the initial interview or hearing on the asylum application ***shall*** commence ***not later than 45 days*** after the date an application is filed." Immigration and Nationality Act, INA 208 § 1158(d)(5)(A)(ii), 8 U.S.C. § 1158(d)(5)(A)(ii) (emphasis added). Following this interview, USCIS must issue a decision on the application. The relevant statute provides that, "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(iii).

30.     As set forth in greater detail below, Plaintiff fears persecution in his home country and has a meritorious claim for asylum. He filed the requisite Asylum Application and a petition to expedite the scheduling of his interview but, at the time this Complaint was filed, USCIS had not scheduled him for an asylum interview despite USCIS' statutory duty and despite him having *filed his application more than seven (7) years ago*.

### B. Plaintiff's Meritorious Claim for Asylum

31.     Plaintiff is a citizen of Belarus who fled the country after facing persecution for

being an activist of the oppositional movement and openly protesting against the Belarus President. Individuals holding oppositional political opinions face severe persecution in Belarus. Belarusian opposition activists are at high risk of being attacked, extorted, jailed, tortured, and killed. The Belarusian police and government are unwilling and unable to protect them because they are the persecutors. In light of the past persecution, Plaintiff has suffered and has a well-founded fear that they will be persecuted due to their political opinion and/or their membership in the social group of political opposition activists in Belarus.

32. There are no further administrative remedies available to Plaintiff to obtain an asylum interview. His application has been pending for over seven years.

**C. Defendants' Failure to Comply With Their Statutory Duty to Adjudicate Plaintiff's Asylum Claims Has Prejudiced Plaintiff and Plaintiff's Derivative Beneficiaries By Leaving Them in Legal Limbo For More Than Seven Years**

33. Plaintiff affirmatively applied for asylum. Defendants' failure to schedule his asylum interview and adjudicate his asylum application has been very prejudicial. Plaintiff wants to live safely and build a permanent life in the United States with his wife, where he will be free from the persecution and threats to his life that he faced in the Belarus. However, having his claim for asylum unadjudicated makes it impossible for Plaintiff to make long-term plans for the future and leaves him in perpetual fear that he will be forced to return to Belarus.

34. Defendants' delay in adjudicating Plaintiff's claim is prejudicing Plaintiff's ability to obtain asylum. With the passage of years, Plaintiff's memories will fade, increasing the risk that he will forget details and give inconsistent testimony, and it will be harder to obtain evidence and witnesses to corroborate his claims.

**D. Defendants Violated Their Duty to Schedule Plaintiff's Asylum Interview and**

**Adjudicate His Claim for Asylum**

35. In January 2018, USCIS adopted a last in, first out policy for scheduling asylum interviews. Under this policy, applicants are divided up into three pools. First priority applicants are those being rescheduled for interviews that were previously cancelled by either the applicant or USCIS. Second priority goes to new applications pending 21 days or less. Third priority goes to those in the "asylum backlog" who are waiting for interviews, starting with the most recently added applicant. *See* **Exhibit D, Affirmative Asylum Interview Scheduling website**. Under these procedures, Defendants have effectively placed Plaintiff's asylum application in an indefinite suspension, such that his claim may never be adjudicated. Moreover, under this policy, USCIS has clearly failed to perform their statutory non-discretionary duty to adjudicate Plaintiff's asylum claim.

36. Statistics released by USCIS illustrate that it will be nearly impossible for Plaintiff and others in the backlog, to receive an interview. This is because applicants in the backlog will only be scheduled for an interview if all newly filed applications have already received interviews. But, based on publicly available information and on information and belief, every month USCIS conducts hundreds to thousands fewer asylum interviews than it receives in new applications. Thus, the number of applicants waiting in the backlog increases each month, and applicants are not being pulled from the backlog to receive interviews. *See* **Exhibit E, Extracts from the 2022 Annual Statistical Report**. *Also See* **Exhibit F, I-589 Affirmative Asylum Summary Overview FY 2022, Q1**.

37. USCIS' most recent public statistics indicate that the total backlog of asylum cases across all asylum offices is 607,651. *See* **Exhibit G at 5, Asylum Quarterly Engagement and Listening Session**, which is up from the backlog of 313,995 cases in January 2018, the month

USCIS adopted the new policy. See **Exhibit H, Asylum Statistics for January 2018**.

In December 2021, the Miami Asylum Office had 115,500 pending asylum cases and the backlog is constantly increasing. See **Exhibit F, I-589 Affirmative Asylum Summary Overview FY 2022, Q1**. The backlog of asylum seekers in legal limbo remains enormous. As of September 30, 2023, the total number of pending affirmative asylum applications is **1,022,163.** See **Exhibit I, Number of Service-wide Forms for July 1, 2023 – September 30, 2023.**

38. Defendants created a system where some new applicants are randomly selected to receive an interview immediately and have their claims adjudicated within weeks. Other new applicants and applicants who applied before the change in policy are arbitrarily placed in the backlog indefinitely and, on information and belief, will not ever receive interviews under USCIS procedures. According to the American Immigration Lawyers Association, USCIS' policy "exacerbate[s] the asylum office backlog and leave[s] thousands of legitimate asylum seekers … in legal limbo indefinitely." See **Exhibit J, Feb. 2, 2018 AILA Practice Pointer**.

39. Defendants' delay in processing the Plaintiff's Asylum Application is unreasonable. USCIS' arbitrary placement of Plaintiff in the backlog, while other applicants are randomly scheduled for near-immediate interviews, renders the delay even more unreasonable. Defendants' adoption of the last-in-first-out policy violates their duty to carry out the adjudicative and administrative functions delegated to them by law with regard to Plaintiff's claim and those of others in the backlog.

## V. COUNT ONE

**(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

40. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein and incorporate them by reference.

41. Plaintiff has a statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a). Defendants failed to perform this nondiscretionary duty and, under Defendants' last-in-first-out policy, will continue to indefinitely delay performing this duty.

42. Plaintiff has no adequate remedy at law and will suffer irreparable harm if Defendants do not promptly adjudicate his Asylum Application.

43. Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), the Court is authorized to compel agency action which has been unreasonably delayed.

44. Defendants' delay in providing an interview to Plaintiff is unreasonable because:

(1) The delay is not governed by a "rule of reason." Moreover, USCIS' decision to adopt a last-in-first-out policy and, thereby, deny adjudication to older filed applications represents a failure of reason.

(2) Congress has provided a statutory deadline of 45 days to schedule and 180 days for the adjudication of asylum claims. INA § 208(d), 8 U.S.C. § 1158(d) Plaintiff has waited over seven years for his claim to be adjudicated.

(3) The delay impacts every aspect of Plaintiff's life, hindering his ability to make permanent plans, move, bring parents to the USA and find long term employment.

(4) The delay here is especially intolerable because it impacts Plaintiff's health and welfare, as well as his economic interests. Among the injuries Plaintiff has suffered are an inability to see and reunite with his family, an inability to find stable housing and employment due to his uncertain legal status, and the daily psychological trauma of not knowing if he can build a new life in the United States or if he will be sent back to the Belarus where he will face a severe risk of persecution.

(5) Expediting the delayed adjudication would not impact Defendant agency USCIS' other priorities. Plaintiff does not ask USCIS to devote greater capacity to adjudicating asylum claims; rather he asks the agency to use its existing capacity to adjudicate his Asylum Application in turn.

(6) Finally, Defendants' decision to adopt a last-in-first-out policy was arbitrary and capricious and has had a disparate impact on Plaintiff's ability to obtain an adjudication of his Asylum Application in contrast to those whose applications have randomly received priority treatment.

45. Having diligently followed the procedures set forth by Defendants and exhausted all administrative remedies, Plaintiff seeks a court order compelling Defendants to schedule and adjudicate his Asylum Application pursuant to 5 U.S.C. § 706(1).

## VI. COUNT TWO

### (Administrative Procedure Act—Exceeds Statutory Authority)

46. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

47. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Defendants may only exercise authority conferred by statute. City of Arlington v. FCC, 569 U.S. 290, 297-98 (2013).

48. Defendants' last-in-first-out policy exceeds Defendants' statutory authority because it violates Plaintiff's statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a) and the APA's requirement that Defendants' discharge this duty without unreasonable delay.

49. The last-in-first-out policy is therefore "in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

50. Defendants' violation causes ongoing harm to Plaintiff.

## VII. COUNT THREE

### (Administrative Procedure Act—Not in Accordance with Law)

51. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

52. Under the APA, a court must set "aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A). Defendants' last-in-first-out policy exceeds Defendants' statutory authority because it violates Plaintiff's statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a) and the APA's requirement that Defendants' discharge this duty without unreasonable delay.

53. The last-in-first-out policy is therefore "not in accordance with law" as required by the APA. 5 U.S.C. § 706(2)(A).

54. Defendants' violation causes ongoing harm to Plaintiff.

## VIII. COUNT FOUR

### (Administrative Procedure Act—Arbitrary and Capricious)

55. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

56. The APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

57. Defendants' last-in-first-out policy is arbitrary and capricious because they effectively created a lottery where some applicants arbitrarily receive an interview immediately and have their claims adjudicated within weeks. Others, such as Plaintiff, are arbitrarily placed in

the backlog indefinitely and, on information and belief, will not ever receive interviews under USCIS procedures. According to the American Immigration Lawyers Association, USCIS' policy "exacerbate[s] the asylum office backlog and leave[s] thousands of legitimate asylum seekers … in legal limbo indefinitely." *See* **Exhibit J, Feb. 2, 2018 AILA Practice Pointer**.

58. Defendants' last-in-first-out policy is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

59. Defendants' violation causes ongoing harm to Plaintiff.

## IX. COUNT FIVE

### (MANDAMUS)

60. Plaintiff repeats and realleges the forgoing paragraphs as if fully set forth herein and incorporate them by reference.

61. Under the Mandamus Act, 28 U.S.C. § 1361, relief may be granted because Defendants owe Plaintiff a non-discretionary statutory duty and Plaintiff has exhausted all other avenues of relief.

62. Plaintiff has a statutory right to apply for asylum and to be considered for that relief pursuant to the Immigration and Nationality Act. INA § 208(a), 8 U.S.C. § 1158(a). Defendants have failed to perform their nondiscretionary duty.

63. Though USCIS has discretion in granting or denying applications, it has no discretion to decline to schedule interviews and to adjudicate Plaintiff's applications for asylum.

64. Aside from claims brought under the APA, supra, Plaintiff has no adequate remedy at law, and will suffer irreparable harm if his Asylum Application is not promptly adjudicated.

65. Having diligently followed the procedures set forth by Defendants and exhausted all administrative remedies, Plaintiff seeks a writ of mandamus or in the nature of mandamus to

end Defendants' unreasonable delay and refusal to adjudicate his Asylum Application.

66. Plaintiff requests a jury trial with respect to all claims so triable.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

a. Accept jurisdiction and maintain continuing jurisdiction of this action;

b. Declare Defendants' actions in this matter an abuse of discretion and not in accordance with the law pursuant to 5 U.S.C. § 706(1), 5 U.S.C. § 706(2)(C) and 28 U.S.C. §§ 2201-02;

c. Declare that Defendants' last-in-first-out policy is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law within the meaning of 5 U.S.C. § 706(2)(A);

d. Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants to schedule an asylum interview and make a determination on Plaintiff's Form I-589, Application for Asylum and Withholding of Removal;

e. Issue a writ of mandamus or in the nature of mandamus, pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 1651, and/or 5 U.S.C. § 706(1), compelling Defendants to schedule an asylum interview within fourteen (14) days from an Order of this Court, and to make a determination on Plaintiff's I-589, Applications for Asylum and Withholding of Removal;

f. Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(2), et seq.; and

g. Grant such other relief as the Court deems necessary and proper.

Dated: May 8, 2024

                                                    Respectfully submitted,

                                                    /Denys Pivniak/
                                                    Denys Pivniak, Esq.
                                                    Florida Bar No. 1035198
                                                    Pivniak Law, P.A.
                                                    7004 SW 40th Street, 604
                                                    Miami, Florida 33155
                                                    Tel. (603) 229-8015
                                                    E-Mail: dpivniak@pivniaklaw.com
                                                    Secondary-Email: dpivniak@gmail.com
                                                    Attorney for Plaintiff